[Cite as *Onderko v. Sierra Lobo, Inc.*, 2014-Ohio-4115.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| Michael P. Onderko | Court of Appeals No. E-14-009 |
| Appellant | Trial Court No. 2013-CV-0187 |
| v. | |
| Sierra Lobo, Inc. | **DECISION AND JUDGMENT** |
| Appellee | Decided: September 19, 2014 |

* * * * *

Margaret O'Bryon, for appellant.

Mark P. Valponi and Brian E. Ambrosia, for appellee.

* * * * *

**YARBROUGH, P.J.**

## I. Introduction

{¶ 1} This is an appeal from the judgment of the Erie County Court of Common Pleas, which granted summary judgment in favor of defendant-appellee, Sierra Lobo, Inc., on plaintiff-appellant's, Michael Onderko, claims for retaliatory discharge and

intentional infliction of emotional distress.  For the following reasons, we affirm, in part, and reverse, in part.

**A.  Facts and Procedural Background**

{¶ 2} On Thursday, August 9, 2012, appellant was moving a table and some cabinets in the course of his employment as an engineering tech for appellee when he felt some pain in his right knee.  Appellant states that because of the pain, he left work early that day.  On his way home, appellant stopped at a gas station.  As he was stepping off a curb, his right knee "gave out."  Consequently, he went to the hospital.  The handwritten notes from the emergency room records document that "[appellant] had R knee pain for a couple weeks, but today took a step off the curb & heard a 'pop.'  Now painful to bear weight."  Appellant states that the emergency room doctor then recommended that he follow up with an orthopedic doctor.

{¶ 3} The next day, appellant saw Dr. Biro.  A clinic note from Dr. Biro indicates that appellant had injured his right knee six weeks earlier, which injury resolved itself after several weeks of ice, rest, and walking on crutches.  The note further indicates that appellant continued with daily living until the knee "completely let go" when he was climbing a curb.

{¶ 4} Notably, neither the hospital records nor Dr. Biro's notes included any mention by appellant that he suffered an injury while at work.  Appellant states in his affidavit that he did not mention work to the emergency room doctor because he was afraid of being fired since it was known that appellee was very concerned about its safety

2.

record. In addition, appellant states that Dr. Biro's clinic note contained incorrect information in that appellant did not have a prior injury to his right knee, but rather had a prior injury to his left knee. Appellant also states that he tried to contact Dr. Biro to correct the clinic note, but that Dr. Biro refused to see him once Dr. Biro found out that it was a workers' compensation injury.

{¶ 5} Following his doctor visits, appellant contacted April Reeves, an employee in appellee's human resources department, and told her that he tore his right ACL.[1] Reeves states in her affidavit that appellant told her the injury did not occur at work, but appellant disputes Reeves' statement in his own affidavit. On August 13, 2012, after speaking with Reeves, appellant then contacted Dave Hamrick, appellee's corporate director of human resources, and inquired about receiving light-duty work. Hamrick informed appellant that appellant could not return to work due to the pain medication appellant was taking.

{¶ 6} Thereafter, still on August 13, 2012, appellant filed a First Report of Injury with the Bureau of Workers' Compensation ("BWC"). Appellant states in his affidavit that he filed the report because Hamrick told him he did not have a work injury but appellant wanted to ensure that it was filed as a work injury. The August 13, 2012 report claims a torn right ACL caused by lifting and pushing equipment. On August 28, 2012, appellant filed a second First Report of Injury, this time claiming a right knee sprain/strain. The BWC initially disallowed appellant's claim, but later vacated that

---

[1] Nothing in the record supports a medical diagnosis of a torn right ACL.

3.

decision and entered a new decision that allowed appellant's claim on the medical condition of a right knee sprain.

{¶ 7} Appellee appealed the BWC's decision to the Industrial Commission. After a hearing, the Industrial Commission reversed BWC's decision and denied appellant's workers' compensation claim on November 6, 2012. In her decision, the Industrial Commission District Hearing Officer found that appellant's injury was not sustained in the course of his employment. Appellant did not appeal the November 6, 2012 decision. He states that he did not file an appeal because he was already back at work and just wanted the ordeal to be over.

{¶ 8} One month later, on December 12, 2012, appellee terminated appellant's employment. Prior to his termination, appellant had received three performance bonuses, had no discipline write-ups, and had no unexcused absences. Appellant states that Hamrick told him he was being terminated due to the workers' compensation outcome. Hamrick, for his part, states in his affidavit that appellant was terminated "for his deceptive attempt to obtain Workers' Compensation benefits for a non-work related injury."

{¶ 9} On March 8, 2013, appellant initiated his present claims for retaliatory discharge in violation of R.C. 4123.90, and for intentional infliction of emotional distress. As to the claim for retaliatory discharge, appellee moved for summary judgment solely on the basis that appellant could not satisfy the required element of having suffered a workplace injury. Specifically, appellee argued that the Industrial Commission

4.

determined that the injury did not occur at the workplace, and that such decision was binding on appellant through the doctrines of res judicata and collateral estoppel. Thus, appellee concluded it was entitled to judgment as a matter of law. Appellant, on the other hand, argued that having an allowable workers' compensation claim is not a required element of retaliatory discharge under R.C. 4123.90. Rather, citing *Ammon v. Fresh Mark, Inc.*, 7th Dist. Columbiana No. 94-C-46, 1995 WL 472301 (Aug. 9, 1995), appellant contended it is the "mere filing of a compensation claim [that] trigger[s] the statutory protection from discharge."

{¶ 10} As to the claim for intentional infliction of emotional distress, appellee argued that it is entitled to summary judgment because its act of terminating appellant for deceptively attempting to collect benefits for a non-work-related injury is not "extreme and outrageous" conduct, especially where appellant is employed "at-will." Appellant responded by arguing that he did not lie about his workers' compensation claim, and that his claim was supported by the medical report of Dr. Ahn, and by the statements of three co-workers who reported that appellant told them he had aggravated his knee while moving cabinets in the shop.

{¶ 11} The trial court, in granting summary judgment to appellee, agreed that res judicata and collateral estoppel precluded appellant from re-litigating whether he suffered a workplace injury. Further, the trial court determined that "[appellee] did not terminate [appellant] for merely filing a workers' compensation claim and subsequently being denied benefits. Instead, [appellee] terminated [appellant] for engaging in deceptive

5.

practices: engaging in deceptive behavior when he attempted to obtain BWC benefits for an injury that was not work related." The court concluded,

> Therefore, even in holding the evidence most favorable to [appellant], reasonable minds can only come to the conclusion that [appellee] did not violate R.C. 4123.90 as [appellant] did not suffer a work related injury and that [appellee] has proven with clear and convincing evidence that [appellee] terminated [appellant] for misrepresenting his injury as a work related injury. [Appellant] cannot bring forth a prima facie case of retaliatory firing.

{¶ 12} Finally, as it pertains to appellant's intentional infliction of emotional distress claim, the trial court held that appellant could not prove that appellee's conduct was extreme and outrageous. As support for its conclusion, the trial court noted that appellant did not suffer a work injury and appellee chose to terminate appellant based upon lawful reasons, i.e., "[appellant's] dishonesty in filing a workers' compensation claim for an injury that did not occur at work."

### B. Assignments of Error

{¶ 13} On appeal, appellant presents two assignments of error for our review:

> 1. The Trial Court Committed Error in Granting Appellee's Motion for Summary Judgment on the Basis that *Res Judicata* and *Collateral Estoppel* prohibited Appellant from Prevailing on a Retaliatory Discharge Claim Regarding a Work Related Injury.

6.

2. The Trial Court Committed Error in Granting Appellee's Motion for Summary Judgment on the Basis that the Employer's Conduct was not Extreme and Outrageous.

## II. Analysis

{¶ 14} We review summary judgment decisions de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). Applying Civ.R. 56(C), summary judgment is appropriate where (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and viewing the evidence in the light most favorable to the non-moving party, that conclusion is adverse to the non-moving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

### A. Retaliatory Discharge

{¶ 15} A claim for retaliatory discharge under R.C. 4123.90 involves a burden shifting analysis. Initially, the employee bears the burden of establishing a prima facie case of retaliatory discharge. *Napier v. Roadway Freight, Inc.*, 6th Dist. Lucas No. L-06-1181, 2007-Ohio-1326, ¶ 12. Once an employee has set forth a prima facie case, the burden then shifts to the defendant to set forth a legitimate, non-retaliatory reason for the discharge. *Id.* "If the employer sets forth a legitimate, non-retaliatory reason, the burden again shifts to the employee to 'specifically show' that the employer's purported reason is pretextual and that the real reason the employer discharged the employee was because

7.

the employee engaged in activity that is protected under the Ohio Workers' Compensation Act." *Id.*

{¶ 16} Here, the threshold issue we must decide in appellant's first assignment of error is what elements are required to prove a prima facie claim for retaliatory discharge under R.C. 4123.90. Specifically, we must determine whether appellant must prove that he suffered a workplace injury. We hold that he does not.

{¶ 17} Our analysis centers on R.C. 4123.90, which provides, in relevant part,

No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

{¶ 18} Appellee argues that the statute requires proof of three elements: (1) the employee was injured on the job, (2) the employee filed a claim for workers' compensation, and (3) the employee was discharged by the employer in contravention of R.C. 4123.90. Similarly, our court on several occasions has stated the elements as, "(1) the employee suffered an occupational injury; (2) the employee filed a workers' compensation claim; and (3) the employee was subsequently demoted or discharged from her employment in retaliation for the filing of the claim for benefits." *E.g., Huth v. Shinner's Meats, Inc.*, 6th Dist. Lucas No. L-05-1182, 2006-Ohio-860, ¶ 17. This formulation of the elements derives from *Wilson v. Riverside Hosp.*, 18 Ohio St.3d 8, 10,

8.

479 N.E.2d 275 (1985), in which the Ohio Supreme Court held "a complaint filed by an employee against an employer states a claim for relief for retaliatory discharge when it alleges that the employee was injured on the job, filed a claim for workers' compensation and was discharged by that employer in contravention of R.C. 4123.90."

{¶ 19} However, the Tenth District, in *Sidenstricker v. Miller Pavement Maint., Inc.*, 10th Dist. Franklin Nos. 00AP-1146, 00AP-1460, 2001-Ohio-4111, ¶ 58, restated the elements of a prima facie case for retaliatory discharge under R.C. 4123.90 as: (1) the employee was engaged in a protected activity, (2) he or she was the subject of an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action. *See also Ferguson v. SanMar Corp.*, 12th Dist. Butler No. CA2008-11-283, 2009-Ohio-4132, ¶ 17 (adopting the Tenth District's approach). An employee engages in a protected activity when he or she "file[s] a workers' compensation claim or institute[s], pursue[s] or testifie[s] in a workers' compensation proceeding regarding a workers' compensation claim." *Sidenstricker* at ¶ 58.

{¶ 20} In reformulating the elements of a prima facie claim under R.C. 4123.90 to clarify that proof of a workplace injury is not required, the Tenth District reasoned first that *Wilson* did not hold that proof of injury on the job is a necessary element of a retaliatory discharge claim. In *Wilson*, the parties did not dispute that the plaintiff was injured in a fall at her place of employment. *Wilson* at 8. As a result of her injury, the plaintiff was unable to work for 11 months. When she notified her employer of her

9.

intention to return to work, the employer informed her that she no longer had a job. The employer explained in a letter that its leave of absence policy only guaranteed a position for ten weeks. Since the plaintiff had been gone for over eleven months, the employer had filled her position. *Id.*

{¶ 21} The plaintiff then filed a complaint against her employer, alleging a violation of R.C. 4123.90. Attached to the complaint was the letter from the employer explaining its leave of absence policy. The employer moved to dismiss the complaint under Civ.R. 12(B)(6) on the grounds that the complaint did not "specifically allege that the discharge was in retaliation for plaintiff's workers' compensation claim." *Id.* On appeal to the Ohio Supreme Court, the employer argued that the attached letter demonstrates that the plaintiff was terminated pursuant to the leave of absence policy and that there was no retaliatory motive. *Id.* at 10. The Ohio Supreme Court rejected this argument, reasoning that the plaintiff's material allegation with respect to the letter was that her employment relationship was terminated; the complaint did not allege that the plaintiff was discharged because of the leave of absence policy. Thus, the leave of absence policy could not be considered in determining whether the motion to dismiss should be granted. *Id.* The court continued, stating that the material allegations in the complaint were that the plaintiff "was employed by [the employer], she was injured on the job, she received workers' compensation, she attempted to return to her job after recovering from the work-related injury, and she was discharged in contravention of R.C. 4123.90." *Id.* The court concluded that "[b]y referring to R.C. 4123.90 in the complaint,

appellant sufficiently complied with the notice pleading requirements of Civ.R. 8(A)." *Id.* Thus, the court held "that a complaint filed by an employee against an employer states a claim for relief for retaliatory discharge when it alleges that the employee was injured on the job, filed a claim for workers' compensation and was discharged by that employer in contravention of R.C. 4123.90." *Id.*

**{¶ 22}** A close examination of *Wilson* reveals that the element of "injury on the job" was not the focal point of the decision, as it was undisputed that the plaintiff suffered such an injury. Rather, the focus of the holding was that a reference to R.C. 4123.90 in a complaint for retaliatory discharge was sufficient to satisfy the notice pleading requirements, and that the plaintiff was not required to specifically allege that the discharge was in retaliation for her filing of a workers' compensation claim.

**{¶ 23}** The Tenth District in *Sidenstricker* further noted that, although Ohio courts frequently cite *Wilson* for the elements of a retaliatory discharge claim under R.C. 4123.90, only one has directly addressed the element of "injury on the job." In that single case, *Kilbarger v. Anchor Hocking Glass Co.*, 120 Ohio App.3d 332, 697 N.E.2d 1080 (5th Dist.1997), the Fifth District held that the employee failed to satisfy the element of injury on the job, but also held that the employee failed to prove that the employer's legitimate reason for discharge was pretextual. Thus, no Ohio case has been decided solely on the issue of injury on the job, as appellee requests that we do here.

**{¶ 24}** After examining *Wilson*, the Tenth District next looked to the language of the statute itself. In examining a statute, the initial question that must be resolved in

11.

determining the intent of the legislature is whether the language is ambiguous. "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus. "However, where a statute is found to be subject to various interpretations, a court called upon to interpret its provisions may invoke rules of statutory construction." *Cline v. Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 96, 573 N.E.2d 77 (1991).

{¶ 25} Here, appellee, through its position, advances the interpretation that the phrase "injury or occupational disease which occurred in the course of and arising out of his employment" limits the type of claim and proceedings for which there is protection, and that the limitation is separate and in addition to the limitation that the claim or proceeding must be under the Workers' Compensation Act. This interpretation results in the conclusion that an employee must prove both that the claim or proceedings are under the Workers' Compensation Act, and that the claim or proceedings are for an injury that definitively occurred in the course of and arising out of the employment. An at least equally reasonable interpretation, however, is that the phrase is a continuation of the single limiting factor that the claim or proceeding be under the Workers' Compensation Act, since all claims under the Workers' Compensation Act are for injuries arising out of the course of employment. Thus, under this interpretation, an employee must prove only

12.

that he or she filed a claim or initiated proceedings under the Workers' Compensation Act.

{¶ 26} Because there are two reasonable interpretations, we must turn to the rules of statutory construction, bearing in mind that "[t]he primary rule in statutory construction is to give effect to the legislature's intention." *Cline* at 97. Initially, we note that, in dealing with ambiguity, the legislature has stated its intention that "where a section of the Workmen's Compensation Act will bear two reasonable but opposing interpretations, the one favoring the claimant must be adopted." *State ex rel. Sayre v. Indus. Comm.*, 17 Ohio St.2d 57, 62, 245 N.E.2d 827 (1969), citing R.C. 4123.95 ("Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees.").

{¶ 27} One of the aids of construction in determining the intent of the legislature is the object sought to be attained by the statute. R.C. 1.49(A). To that end, the Ohio Supreme Court has stated that the basic purpose of the anti-retaliation provision in R.C. 4123.90 is "'to enable employees to freely exercise their rights without fear of retribution from their employers.'" *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 22, quoting *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, ¶ 43. Under appellee's interpretation, that purpose would be frustrated in situations such as this where the precise cause of the injury is unknown at the time, and multiple incidents may have substantially aggravated a condition resulting in an injury. Requiring an employee to successfully prove that the

13.

injury occurred at work for purposes of a retaliatory discharge claim would have a chilling effect on the exercise of his or her rights because the employee would be forced to choose between a continuation of employment and the submission of a workers' compensation claim. This choice must be made by the employee knowing that if he or she fails to prove that the cause of the injury was work related, not only will his or her claim be denied, but the employer would then be free to terminate the employment simply because the claim was filed. As recognized by the Nevada Supreme Court, "In the absence of an injury resulting in permanent total disability, most employees would be constrained to forego their entitlement to industrial compensation in favor of the economic necessity of retaining their jobs." *Hansen v. Harrah's*, 100 Nev. 60, 64, 675 P.2d 394 (1984).

{¶ 28} Therefore, in accordance with R.C. 4123.95 and the basic purpose of the anti-retaliation provision, we construe R.C. 4123.90 to require that an employee must prove only that he or she "filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act." The employee is not required to prove definitively that the injury occurred and arose out of the course of employment. In so doing, we agree with the reasoning of the Tenth District, and adopt its holding that to prove a prima facie case of retaliatory discharge, the employee must show:

> (1) the employee filed a workers' compensation claim or instituted, pursued
> or testified in a workers' compensation proceeding regarding a workers'
> compensation claim (the "protected activity"), (2) the employer discharged,

14.

demoted, reassigned or took punitive action against the employee (an "adverse employment action"), and (3) a causal link existed between the employee's filing or pursuit of a workers' compensation claim and the adverse employment action by the employer ("retaliatory motive"). *Sidenstricker*, 10th Dist. Franklin Nos. 00AP-1146, 00AP-1460, 2001-Ohio-4111 at ¶ 58.

{¶ 29} Our holding today, however, does not grant employees the power to file frivolous workers' compensation claims with impunity. "The scope of R.C. 4123.90 is narrow and protects only against adverse employment actions in direct response to the filing or pursuit of a workers' compensation claim." *Ayers v. Progressive RSC, Inc.*, 8th Dist. Cuyahoga No. 94523, 2010-Ohio-4687, ¶ 14; *see also Oliver v. Wal-Mart Stores, Inc.*, 10th Dist. Franklin No. 02AP-229, 2002-Ohio-5005, ¶ 10. "R.C. 4123.90 does not prohibit a discharge for just and legitimate termination of employment. It does not suspend the rights of an employer, nor insulate an employee from an otherwise just and lawful discharge." *Markham v. Earle M. Jorgensen Co.*, 138 Ohio App.3d 484, 493, 741 N.E.2d 618 (8th Dist.2000), quoting *Brown v. Whirlpool Corp.*, 3d Dist. Marion No. 9-86-20, 1987 WL 16261 (Sept. 1, 1987).

{¶ 30} Several Ohio courts have found that committing fraud in the pursuit of a workers' compensation claim is a legitimate, non-retaliatory reason for discharge. In *Kilbarger v. Anchor Hocking Glass Co.*, 120 Ohio App.3d 332, 697 N.E.2d 1080 (5th Dist.1997), the employer terminated the employee for falsification of records in

15.

connection with the filing of a workers' compensation claim. In that case, the employee's ex-girlfriend testified that the employee injured himself while painting houses during the plant's summer shutdown, but told her that he would claim the injury occurred while carrying buckets at the plant. Following a bench trial, the trial court found in favor of the employer on the employee's claim for retaliatory discharge, which the Fifth District affirmed. *Id.* at 336, 343. In *Kent v. Chester Labs Inc.*, 144 Ohio App.3d 587, 761 N.E.2d 60 (1st Dist.2001), the employer terminated the employee for dishonesty based on the statement of the employee's co-worker that her injury "was fake as fake could be," and on the fact that the employee had previously injured herself while lifting a bale of newspapers outside of work. The trial court granted summary judgment in favor of the employer, but the First District reversed, and remanded the matter for a trial to determine the motive for the discharge. *Id.* at 593-594. In another case from the First District, *Kelly v. Coca-Cola Bottling Co.*, 1st Dist. Hamilton No. C-030770, 2004-Ohio-3500, the employer fired the employee for dishonesty relating to lifting weights in excess of the doctor's recommendation. The trial court granted summary judgment, but the First District reversed, finding that a genuine issue of material fact existed on whether the employer's stated reason for termination was pre-textual. *Id.* at ¶ 42. Finally, in *Ayers*, *supra*, the employer terminated the employee for violating the company's code of conduct policy against deceit. In that case, the employee answered on a workers' compensation questionnaire that she had never been involved in an automobile accident. However, the employee had actually been involved in at least five automobile accidents.

16.

Further, testimony was presented that the employee called the doctor's office directly to reschedule her independent medical examination, in violation of the company policy that only the employer can reschedule an examination, and that the employee represented herself as someone else in order to reschedule. The trial court granted summary judgment in favor of the employer, and the Eighth District affirmed finding that the employee failed to establish a prima facie case and failed to demonstrate that the stated reason for discharge was mere pretext. *Ayers*, 8th Dist. Cuyahoga No. 94523, 2010-Ohio-4687 at ¶ 18.

{¶ 31} These cases are informative in that in each of them, the question of the employee's honesty regarding the workers' compensation claim was determined within the framework of the burden shifting analysis pertaining to the true motivation behind the adverse employment action. If the employer can show that the basis of the discharge was fraud or dishonesty, the employee has the opportunity to prove that the stated reason is pretextual, and that the true motivation was the filing of the workers' compensation claim itself. An employee can prove pretext by showing that the employer's proffered reason "(1) had no basis in fact, (2) did not actually motivate the adverse employment action, or (3) was insufficient to motivate the adverse employment action." *Ferguson*, 12th Dist. Butler No. CA2008-11-283, 2009-Ohio-4132 at ¶ 21, citing *Wysong v. Jo-Ann Stores, Inc.*, 2d Dist. Montgomery No. 21412, 2006-Ohio-4644, ¶ 13; *King v. Jewish Home*, 178 Ohio App.3d 387, 2008-Ohio-4724, 898 N.E.2d 56, ¶ 9 (1st Dist.). We think that such an approach is appropriate in this situation as well.

17.

{¶ 32} However, we do not reach the issue of whether appellee put forth a legitimate, non-retaliatory reason for discharge, or whether appellant demonstrated that the proffered reason was pretext through evidence showing that he did not in fact lie or commit fraud in the filing of his workers' compensation claims. It is well-settled in Ohio that "a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of *informing the trial court of the basis for the motion*, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." (Emphasis added.) *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *see also Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus ("A party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond."). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Dresher* at 293. Here, with respect to the retaliatory discharge claim, appellee made no argument that it provided a legitimate, non-retaliatory reason for discharge or that appellant failed to provide evidence demonstrating that the reason was merely pretext. Instead, appellee argued solely that by failing to appeal the Industrial Commission's decision disallowing benefits, appellant was collaterally estopped or barred by res judicata from establishing the workplace injury element of his claim. Because we have determined that a workplace injury is not a required element of a retaliatory discharge claim under R.C. 4123.90, and because no

18.

other grounds were offered, we conclude that summary judgment for appellee on the retaliatory discharge claim was inappropriate.

{¶ 33} Accordingly, appellant's first assignment of error is well-taken.

## B.  Intentional Infliction of Emotional Distress

{¶ 34} "In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994).

{¶ 35} In its motion for summary judgment, appellee argued that it was entitled to judgment because its conduct was not extreme and outrageous as a matter of law. Extreme and outrageous conduct has been described as:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community

19.

would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 374-375, 453 N.E.2d 666 (1983), quoting Restatement of the Law 2d, Torts, Section 46(1), Comment d (1965).

{¶ 36} In particular, appellee contended that appellant did not pursue a valid workers' compensation claim, but rather attempted to collect benefits for a non-work related injury. Appellee stated that "[s]uch deceptive conduct constituted a legitimate, non-discriminatory, non-retaliatory business reason to terminate [appellant's] employment and cannot be found to be 'extreme and outrageous' conduct," so as to support an intentional infliction of emotional distress claim. Further, appellee contended that the termination of an at-will employee is an exercise of the employer's legal rights and does not constitute extreme or outrageous conduct. Appellee relies on *Jones v. Wheelersburg Local School Dist.*, 4th Dist. Scioto No. 12CA3513, 2013-Ohio-3685, ¶ 42, for the proposition that

> "Termination of employment, without more, does not constitute the outrageous conduct required to establish a claim of intentional infliction of emotional distress, even when the employer knew that the decision was likely to upset the employee." * * * Moreover, an employer is not liable for a plaintiff's emotional distress if the employer does no more than "insist upon his legal rights in a permissible way, even though he is well aware

20.

that such insistence is certain to cause emotional distress." (Internal citations omitted.)

{¶ 37} Appellant responded by arguing that he never lied about his workers' compensation claim, and that his claim was supported by the medical report of Dr. Ahn, who examined him as part of his workers' compensation claim, and by three employees who acknowledged that appellant said he aggravated his knee while moving cabinets at work.

{¶ 38} Upon our review of the facts, viewed in the light most favorable to appellant, we conclude that no reasonable fact-finder could find that appellee's conduct rises to the level of outrageousness sufficient to support a claim for intentional infliction of emotional distress. We hold that, under the circumstances, appellee's actions in terminating an at-will employee do not go beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community. Therefore, appellee's actions are not extreme and outrageous as a matter of law, and summary judgment in favor of appellee on appellant's intentional infliction of emotional distress claim is appropriate.

{¶ 39} Accordingly, appellant's second assignment of error is not well-taken.

### III. Conclusion

{¶ 40} For the foregoing reasons, the judgment of the Erie County Court of Common Pleas is affirmed, in part, and reversed, in part. The matter is remanded to the

21.

trial court for further proceedings on appellant's claim for retaliatory discharge under

R.C. 4123.90. Costs of this appeal are to be split evenly between the parties pursuant to

App.R. 24.

                                                          Judgment affirmed, in part,
                                                             and reversed, in part.


        A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.          _____
                                                  JUDGE

Stephen A. Yarbrough, P.J.

                                  _____
James D. Jensen, J.                               JUDGE
CONCUR.

                                  _____
                                                  JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.