[Cite as *Davis v. United Dairy Co.*, 2025-Ohio-5479.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

LOUIS E. DAVIS,

Plaintiff-Appellant,

v.

UNITED DAIRY COMPANY,

Defendant-Appellee.

---

### OPINION AND JUDGMENT ENTRY
### Case No. 25 BE 0031

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 24 CV 59

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. R. Jared Lowe*, Schrader Duff Law & Lowe, PLLC, for Plaintiff-Appellant and

*Atty. David A. Campbell* and *Atty. Donald G. Slezak*, Gordon Rees Scully Mansukhani, LLP, for Defendant-Appellee.

Dated: December 9, 2025

**HANNI, J.**

**{¶1}** Plaintiff-Appellant, Louis E. Davis, appeals from a Belmont County Common Pleas Court judgment granting summary judgment in favor of Defendant-Appellee, United Dairy Company, on Appellant's claim for workers' compensation retaliation. Appellant claims genuine issues of material fact existed regarding whether Appellee set forth a legitimate and non-retaliatory reason for Appellant's termination and whether the reason for his termination was a pretext. Because no genuine issue of material fact exists, summary judgment was proper and the trial court's judgment is affirmed.

**{¶2}** Appellee is in the business of manufacturing, selling, and delivering milk. Appellee is headquartered in Martins Ferry, Ohio.

**{¶3}** Appellant is a CDL driver. Appellee hired Appellant as a relief driver on or about November 7, 2023. A relief driver fills in on routes when the assigned driver is on vacation, is off sick, or is otherwise absent from work. Appellant's position was governed by a collective bargaining agreement (CBA) between Appellee and the International Brotherhood of Teamsters. Under the CBA, Appellant was hired for a 75-day probationary period during which Appellee could dismiss Appellant "for any reason and without recourse."

**{¶4}** When drivers are hired by Appellee, they train for their job by pairing up with senior drivers on their assigned routes. While driving with senior drivers, probationary drivers are to take notes, learn the routes, learn the paperwork involved, and see to customer demands. The senior drivers then provide feedback to Appellee's managers. During his probationary time, Appellant worked with multiple senior drivers.

**{¶5}** On December 4, 2023, Appellant was working with a senior driver. He claimed he injured his lower back while working. Appellant finished his shift that day and went home. Later that night, he went to the hospital. He was diagnosed with two bulging discs in his lower back. Appellant's physician provided him with a medical excuse from work for December 5, 2023 to December 8, 2023. Appellant filed a workers' compensation claim. He returned to work without any work restrictions on December 8.

Case No. 25 BE 0031

{¶6} Dave Tucker was Appellant's supervisor. During Appellant's time working for Appellee, six of the senior union drivers reported issues with Appellant including sleeping during the routes, not paying attention to the routes, and not working hard to unload the trucks.

{¶7} During the probationary period, a probationary driver is to complete a solo route. Appellant's solo route took him double the normal amount of time to complete. Appellant claims this was because the truck was loaded backwards so he had to empty and then reload the truck. During his solo route, Appellant also dropped a pallet of milk and the milk was not then usable.

{¶8} After Appellant returned from his solo route, on December 27, 2023, Doug Longenette, Appellee's head of human resources, informed Appellant he was being discharged. Appellant was still a probationary employee at the time of discharge who could be dismissed for any reason and without recourse.

{¶9} Appellant filed a complaint against Appellee on March 11, 2024, asserting a claim for workers' compensation retaliation. He claimed Appellee fired him because he filed a workers' compensation claim. Appellee filed an answer denying this claim.

{¶10} On May 2, 2025, Appellee filed a motion for summary judgment. Appellee stated the evidence was undisputed that it terminated Appellant's employment while he was still in his probationary period due to reports from senior drivers of: Appellant sleeping on the job; Appellant's lack of effort; Appellant's lack of learning the job; and Appellant's poor performance on his solo route. Appellant filed a brief in opposition asserting genuine issues of material fact existed to preclude summary judgment.

{¶11} The trial court held a hearing on Appellee's summary judgment motion on June 5, 2025, where it heard arguments from both parties.

{¶12} The court granted Appellee's motion for summary judgment in its June 17, 2025 judgment entry. The court found, assuming all inferences and evidence in favor of Appellant, that Appellant demonstrated a prima facie case of retaliation. This shifted the burden to Appellee to set forth a legitimate non-retaliatory reason for the discharge. The court then went on to find:

> The depositions of Tucker and Longenette provide that the Plaintiff's
> employment was terminated due to negative reviews from six (6) senior

drivers. One of which includes Joseph Marcinek whose affidavit was filed. Another one of these drivers is presently on worker's compensation and still employed by the Defendant. (Tucker Deposition page 33, lines 21-24)[.] These negative reviews include sleeping while at work and not adequate driving skills. Defendants assert they spoke with the Plaintiff about improving, which he asserted he would but did not. Defendants provided the final straw was the Plaintiff's only solo run which did not go well.

Even with the Plaintiff's assertions that he had been doing a good job, it is clear the Defendant has set forth legitimate, non-retaliatory reasons for the Plaintiff's discharge. With this being accomplished, the burden then shifts back to the employee to show that the employer's reason is a pretext and the real reason for the discharge was the employee's protected activity under the Ohio Worker's Compensation Act . . .

In viewing all of the evidence, most favorably in favor of the Plaintiff, the Plaintiff is unable to meet this burden.

The oral argument made by the Plaintiff that three (3) out of ninety-five (95) of the Defendant's employees were terminated or resigned at the same or similar time when they filed worker's compensation claims does not demonstrate a prevailing pattern. This is especially true when the Plaintiff did not provide any other information on these three (3) individuals other than the aforementioned.

Depositions of Longenette and Tucker provide the Plaintiff was terminated during his probationary period. They both provide this was based upon information from senior drivers that the Plaintiff drove with, as well as what occurred on Plaintiff's one (1) solo route. Of these senior drivers, one (1) is presently on worker's compensation and still employed with the Defendant. Another one of them signed an affidavit providing what he advised Tucker about Plaintiff's inability to perform the job requirements.

This individual, Joseph Marcinek, undertook this even though he is no longer employed by the Defendant.

**{¶13}** Based on the above, the trial court found that viewing the evidence in the light most favorable to Appellant, Appellant was unable to show that the reasons provided by Appellee to terminate him were a pretext. Thus, the court found no genuine issue of material fact and granted summary judgment in favor of Appellee.

**{¶14}** Appellant filed a timely notice of appeal on July 11, 2025.

**{¶15}** Appellant's sole assignment of error states:

THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW BY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEE/DEFENDANT, AND THEREFORE DISMISSING APPELLANT/PLAINTIFF'S CLAIM OF WORKERS' COMPENSATION DISCRIMINATION UNDER OHIO REVISED CODE §4123.90.

**{¶16}** Appellant argues genuine issues of material fact exist regarding the reasons Appellee gave for his termination. He claims he disputed the statements made by the senior drivers regarding his work performance and driving skills. Appellant cites to his own deposition testimony that: he was performing well; he helped the senior drivers; and he took notes on the routes. He also points out that Appellee could not produce any documentary evidence, such as a write-up or performance review, to support its reason for terminating him. And Appellant claims Tucker did not report that any senior drivers had complained about his driving skills. Additionally, Appellant takes issue with the trial court's finding that his "solo run" did not go well. He claims the trial court did not construe the evidence in his favor pointing to his own statements that he was still suffering from bulging discs, was never trained on that particular route, and the truck was loaded contrary to normal practice, which required him to unload the entire truck at the first stop.

**{¶17}** A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 2015-Ohio-4167, ¶ 8 (9th Dist.); Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine

issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist. 1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

**{¶18}** If the moving party meets its burden, then the burden shifts to the nonmoving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993).

**{¶19}** A claim for workers' compensation retaliation is governed by R.C. 4123.90, which provides in relevant part:

> No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

**{¶20}** Courts analyze a workers' compensation retaliatory-discharge claim under a burden-shifting framework. *Creveling v. Lakepark Industries, Inc.*, 2021-Ohio-764, ¶ 24 (6th Dist.), citing *Onderko v. Sierra Lobo, Inc.*, 2014-Ohio-4115, ¶ 15 (6th Dist.). The burden is first on the employee to show a prima facie case that: (1) they filed a workers' compensation claim, or instituted, pursued, or testified in a workers' compensation proceeding; (2) their employer discharged, demoted, reassigned, or took punitive action against them; and (3) there is a causal link between the employee's filing or pursuit of a workers' compensation claim and the employer's adverse action. *Id.*, citing *Onderko* at ¶ 28.

**{¶21}** If the employee establishes a prima facie case of workers' compensation retaliation, the burden shifts to the employer to show a legitimate, non-retaliatory reason for the discharge. *Id.* at ¶ 25, citing *Onderko* at ¶ 15. If the employer then meets its burden, the burden then shifts back to the employee to show the employer's reason is

pretextual, and "that the actual reason for the employee's discharge was 'because the employee engaged in activity that is protected under the Ohio Workers' Compensation Act.'" *Id*., quoting *Onderko* at ¶ 15. In order for the employee to demonstrate a pretext, they must show that the employer's reason either had no basis in fact, did not actually motivate the discharge, or was insufficient to motivate the discharge. *Id*., citing *Harris v. OHNH EMP, L.L.C.*, 2015-Ohio-3212, ¶ 15 (9th Dist.).

**{¶22}** Here, the trial court found that Appellant established a prima facie case of retaliatory discharge. It did not elaborate on this point. Briefly, however, Appellant clearly demonstrated the first two elements of a prima facie case: (1) Appellant filed a workers' compensation claim; and (2) Appellee discharged Appellant. As to the third element, the temporal proximity must be "very close" to create an inference of a causal link between the employee's filing or pursuit of a workers' compensation claim and the employer's adverse action. *O'Malley-Donegan v. MetroHealth Sys.*, 2017-Ohio-1362, ¶ 23 (8th Dist.), quoting *Meyers v. Goodrich Corp.*, 2011-Ohio-3261, ¶ 28 (8th Dist.). A three-week interval has been found to be sufficient. *Id*., citing *Thatcher v. Goodwill Indus.*, 117 Ohio App.3d 525, 535, (9th Dist. 1997). Here, Appellant reported his claim on or about December 4, 2023 and Appellee terminated Appellant's employment just over three weeks later on December 27, 2023. Thus, Appellant established the necessary causal link for a prima facie case.

**{¶23}** We must move on then to examine whether Appellee provided a legitimate, non-retaliatory reason for the discharge.

**{¶24}** According to human resources director Longenette, Appellee terminated Appellant based largely on the negative feedback from the senior drivers, with whom Appellant trained, regarding Appellant's work ethic, work performance, and driving skills. (Longenette depo. 54; Ex. 2, Interrogatory 1). Appellee also based the termination decision on Appellant's poor performance on his solo route. (Longenette depo. 55-57; Ex. 2, Interrogatory 1). Longenette explained that the route should have taken only six hours to complete but it took Appellant over 12 hours and Appellant made an error during this time. (Longenette depo. 56-57; Ex. 2, Interrogatory 1).

**{¶25}** Joseph Marcinek, the union steward during Appellant's employment with Appellee, provided his affidavit. Marcinek explained that under the CBA, Appellant was

employed on a trial basis for 75 days during which time Appellee could dismiss Appellant for any reason without recourse. (Marcinek Aff. ¶ 6). During a probationary period, senior and well-qualified drivers work with the probationary employee in order to determine if the probationary employee is qualified to become a relief driver. (Marcinek Aff. ¶ 10). Marcinek worked with Appellant for approximately three weeks and reported to Tucker and Longenette as to Appellant's performance during this time. (Marcinek Aff. ¶ 12).

{¶26} Marcinek averred that he told Tucker and Longenette the following. Appellant did not work hard and was not cut out to be a relief driver. (Marcinek Aff. ¶ 13). Appellant would sleep 30-60 minutes each night they worked together. (Marcinek Aff. ¶ 15). Appellant expressed that he was only seeking a route where he drove the truck but was not required to work with dollies or lifts to actually deliver the milk. (Marcinek Aff. ¶ 16). Marcinek was not comfortable with Appellant's driving skills. (Marcinek Aff. ¶ 18).

{¶27} Dave Tucker stated that five other senior drivers with whom Appellant rode also all gave negative feedback as to Appellant's performance. Specifically, Tucker stated that Pat O'Brien reported to him that Appellant had "done a lot of sleeping and playing on his phone instead of paying attention as to where they were going, and that he [Appellant] couldn't grasp the work, as far as remembering what to do at the stops." (Tucker depo. 38). Robert Morley reported to Tucker that Appellant struggled with getting the product from the trailer to the customer. (Tucker depo. 39). Robert Hennebert brought up to Tucker that Appellant was sleeping, was on his phone, and was not grasping how to check the product in. (Tucker depo. 41). T.R. Hopkins also informed Tucker that Appellant spent time sleeping and using his phone. (Tucker depo. 41). Finally, Evan Tucker reported that Appellant did not write down directions and spent a lot of time sleeping. (Tucker depo. 41).

{¶28} Tucker also stated that he sent Appellant on a solo route to two Walmart stores. (Tucker depo. 50). He stated that Appellant had been on several Walmart routes with some of the senior drivers and that they were "pretty easy, straightforward[.]" (Tucker depo. 51).

{¶29} Appellant, in his own deposition, stated that the senior drivers with whom he rode told him he was doing a great job. (Davis depo. 42-43). As to his solo route, Appellant stated that he had never driven that particular route before. (Davis depo. 47).

He acknowledged that it took him a long time to complete, approximately 10 to 12 hours. (Davis depo. 48). He stated he had a few "hiccups" but he got the job done. (Davis depo. 48). Appellant explained that no one told him to go to the Steubenville Walmart first because that was the order the milk was loaded on the trailer. (Davis depo. 49). So he went to the Weirton Walmart first and when he opened the trailer he saw the milk in the front was meant for Steubenville. (Davis depo. 49). Consequently, Appellant had to unload the entire trailer in Weirton to get to the milk for that store. (Davis depo. 49). In the process, he "dumped" one of the pallets rendering it unusable. (Davis depo. 49-50).

{¶30} Based on all of the above evidence and construing it in favor of Appellant as we are required to do, no genuine issue of material fact exists that Appellee had a legitimate, non-retaliatory reason for discharging Appellant.

{¶31} Appellant was a probationary employee. As a probationary employee, Appellee could terminate Appellant "for any reason and without recourse." The evidence provided a solid, non-retaliatory basis for Appellant's termination. Numerous senior drivers with whom Appellant worked stated that Appellant would sleep on the job. This alone is a basis for terminating a probationary employee. In addition to sleeping, the senior drivers reported that Appellant spent work time playing on his phone, Appellant struggled with getting the product from the trailer to the customer, and Appellant was not paying attention to the routes. Moreover, when Appellant was given the opportunity for a solo route, he took significantly longer to complete the route than should have been necessary and he dumped a pallet of milk rendering it unusable. Appellee terminated Appellant immediately after he returned from his solo route. The timing of Appellant's termination, directly after his poor performance on his solo route, indicates this was the "last straw", so to speak, for Appellee.

{¶32} While Appellant did state that the senior drivers told him he was doing a great job, this does not create a genuine issue of material fact as Appellant suggests. It is entirely possible that the senior drivers told Appellant that he was doing well when speaking directly with him. Nonetheless, they could have still reported their concerns with Appellant's work performance to Tucker.

{¶33} Based on all of the above, the trial court properly granted summary judgment in favor of Appellee.

{¶34} Accordingly, Appellant's sole assignment of error is without merit and is overruled.

{¶35} For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, P.J., concurs.

Dickey, J., concurs.

[Cite as *Davis v. United Dairy Co.*, 2025-Ohio-5479.]

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.


## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**